### DAVIS et al. v. ROCKTON & RION R. R.
### No. 474.

District Court, W. D. South Carolina, Rock Hill Division.

March 29, 1946.

W. K. Charles, of Greenwood, S. C., for plaintiffs.

Hemphill & Hemphill, of Chester, S. C., for defendant.

WYCHE, District Judge.

This is an action to recover unpaid minimum wages, overtime compensation, liquidated damages and attorney's fees under the provisions of the Fair Labor Standards Act, 29 U.S.C.A. §§ 201–219, for work performed for the defendant by the plaintiffs.

By its answer, the defendant denies the material allegations of the complaint and says that neither it nor its employees is engaged in commerce or the production of goods for commerce, as defined by the Fair Labor Standards Act, and by way of an affirmative defense, alleges that the action is barred by the South Carolina statute of limitations, and that it has no obligation to pay overtime because of an exemption provided in section 13(b) (2), 29 U.S.C.A. § 213(b) (2), under which section overtime need not be paid to any employee of an employer subject to the provisions of Part 1 of the Interstate Commerce Act, 49 U.S.C.A. §§ 1–27.

In the case of Walling v. Rockton & Rion R. R., D.C., 54 F.Supp. 342, affirmed 4 Cir., 146 F.2d 111, certiorari denied, 324 U.S. 880, 65 S.Ct. 1026, heretofore tried before me, the Rockton & Rion Railroad, the defendant in the action here, was enjoined from violating the provisions of the Fair Labor Standards Act with reference to the payment of minimum wages and overtime compensation. All the testimony, depositions and exhibits that were admitted in evidence in the trial of that case were admitted in evidence in the case now before me, and the same issues are presented here as were involved in that case, with the exception that the defendant has alleged the bar of the South Carolina statute of limitations as a further defense to the cause now under consideration.

The defendant is engaged in transporting over its line a large volume of shipments destined for points outside of South Carolina, practically all such shipments being made by granite companies located on defendant's line. During the period covered in the complaint, such shipments have averaged in number in excess of two hundred a month. Although the less than carload shipments have predominated, yet measured in terms of carload shipments, the total monthly average has ranged from approximately thirty-five to approximately one hundred carloads. During the same period of

time the intrastate shipments (all carload lots) have averaged approximately three hundred and fifty a month. On a weight and tonnage basis, defendant's superintendent testified that the interstate shipments accounted for only about ten per cent. of the total traffic. When measured either on the basis of the number of shipments or of tonnage hauled, the defendant is substantially engaged in transporting goods destined to out-of-state points, since on either basis large volumes of goods transported by the defendant are ultimately carried to out-of-state points.

The defendant is also engaged in transporting over its line a substantial number of shipmates which have originated at out-of-state points. All of such shipments are consigned to the granite companies located upon the defendant's line at Rion and at Anderson's Quarry. The defendant also frequently handles incoming express shipments as freight which have originated at out-of-state points. These also are all consigned to the granite companies.

It, therefore, follows that the defendant is engaged in interstate commerce and in intrastate commerce.

The plaintiffs were employed by the defendant, during the periods set out in the complaint, as section-hands and members of construction crews. Their duties require them to construct, maintain and repair the roadbed, railroad tracks, bridges and trestles, over which the defendant operated its railway locomotives and cars for the hauling and transportation of freight and express in interstate commerce.

The defendant did not pay to the plaintiffs, during the periods alleged in the complaint, minimum wages and overtime compensation, as prescribed by the provisions of the Act, and employed the plaintiffs for work-weeks in excess of the hours provided in the Act, and failed to compensate them for such overtime at rates of not less than one and one-half times their regular rate of pay.

The questions involved in this controversy are: (1) Are the plaintiffs engaged in commerce, and, (2) if they are so engaged, whether the exemption from the requirement to pay overtime applies, and, (3) is plaintiffs' cause of action barred under the statute of limitations of South Carolina? Acts of the General Assembly of South Carolina May 25, 1945, 44 St. at Large, page 377; Section 356, Code of laws of South Carolina 1942.

The first two questions have already been decided by me adversely to the defendant in Walling v. Rockton & Rion R. R., supra. The defendant contends, however, that the two cases are distinguishable, in that the testimony in Walling v. Rockton & Rion R. R., supra, referred to employees generally, and had particular reference to the work performed by the engineers and firemen and train crew, and that in the cause now before me, there is no evidence in the record from which it could be held directly, or by implication, that any one or more of the plaintiffs handled, or transported in any manner, any of the goods which were shipped from points along the Rockton & Rion Railroad to places in other states, and from out-of-state sources to points along defendant's line.

It has been found that the defendant is engaged in interstate commerce, as well as intrastate commerce, so in considering the foregoing contention of the defendant, I am only concerned with the nature of the work performed by the plaintiffs during the time of their employment by the defendant. It is now well established that to be engaged in commerce within the meaning of the Act an employee must be actually engaged in the movement of commerce, or the services he performs must be so closely related thereto, as to be for all practical purposes an essential part thereof. McLeod v. Threlkeld, 319 U.S. 491, 63 S.Ct. 1248, 87 L.Ed. 1538. The question that naturally arises, therefore, is, was the work performed by the plaintiffs being done independently of the interstate commerce in which the defendant was engaged or was it so closely connected therewith as to be an essential part thereof? In answering a similar question, the Supreme Court in the case of Pedersen v. Delaware, Lack. & West. R., 229 U.S. 146, 33 S.Ct. 648, 649, 57 L.Ed. 1125, Ann.Cas.1914C, 153, said: "Tracks and bridges are as indispensable to interstate commerce by (a) railroad as are engines and cars; and sound economic reasons unite with settled rules of law in demanding that all of these instrumentalities be kept in repair. The security, expedition, and efficiency of the commerce depends in large measure upon this being done. * * * the work of keeping such instrumentalities in a proper state of repair while thus used is so closely related to such commerce as to be in practice and in legal contemplation a part of it. * * * The true test always is: Is the work in question

a part of the interstate commerce in which the carrier is engaged? * * * True, a track or bridge may be used in both interstate and intrastate commerce, but when it is so used it is none the less an instrumentality of the former; nor does its double use prevent the employment of those who are engaged in its repair or in keeping it in suitable condition for use from being an employment in interstate commerce."

It was the plaintiffs' duty to keep the railroad in repair, to put in crossties, to lay rails, build bridges and trestles, haul dirt, and pack the same around the crossties, put in new rails and spikes, and to maintain and repair the railroad and railroad bed over which the Rockton & Rion Railroad operated its trains in interstate commerce. Such maintenance, repair and up-keep as performed by the plaintiffs are not only necessary but are an essential part of the railroad's operation in interstate commerce, and such work of the plaintiffs has a direct bearing on the traffic that passes over its tracks. It is not important that the plaintiffs did not actually handle or come into contact with the freight and express transported by the defendant over its tracks. It is sufficient if plaintiffs' services are useful and essential to the operation of the defendant's railroad in interstate commerce. Kirschbaum v. Walling, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; see also, Virginian R. Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789; Roland Elec. Co. v. Walling, 66 S.Ct. 413; J. F. Fitzgerald Co. v. Pedersen, 324 U.S. 720, 65 S.Ct. 892.

Is plaintiffs' cause of action barred by the statute of limitations of South Carolina?

First, the defendant relies upon an Act of the General Assembly of South Carolina, effective May 25, 1945, which is as follows: "Section 1. Time sue for wages claim under federal statute or regulation.—That in any and all suits, or actions, concerning, or in any manner relating to wages claimed under a federal statute or regulation such suit or action must be begun within a year from the time of the accrual of the demand. Section 2. Repeal.—All Acts or parts of Acts inconsistent with this Act are hereby repealed. Section 3. Time effective.—This Act shall take effect upon its approval by the Governor. Approved May 25, 1945." Acts of the General Assembly of South Carolina 1945, page 377.

■ There is no provision in the Fair Labor Standards Act limiting the time for commencement of actions arising thereunder, and there is no federal statute of limitations applicable thereto. Generally, under such circumstances, the statute of limitations of the state wherein the action is brought is applicable. Hall v. Ballard, 4 Cir., 90 F.2d 939. The reason for this rule is that state statutes of limitations are considered as rules of decision and binding on federal courts under the provisions of 28 U.S.C.A. § 725, which provides: "The laws of the several States, except where the Constitution, treaties, or statutes of the United States otherwise require or provide, shall be regarded as rules of decision in trials at common law, in the courts of the United States, in cases where they apply."

■ But it is well established that the Rules of Decision Act does not require the application of a state statute of limitations which discriminates against federal claims or rights accruing under federal laws, Campbell v. Haverhill, 155 U.S. 610, 15 S. Ct. 217, 39 L.Ed. 280; Pufahl v. Estate of Parks, 299 U.S. 217, 57 S.Ct. 151, 81 L.Ed. 133; McKnett v. St. Louis & S. F. R. Co., 292 U.S. 230, 54 S.Ct. 690, 78 L.Ed. 1227; Brimmer v. Rebman, 138 U.S. 78, 82, 11 S.Ct. 213, 34 L.Ed. 862; or which "would be inconsistent with the terms or defeat the purposes of the legislation of Congress," Hills & Co. v. Hoover, 220 U.S. 329, 31 S.Ct. 402, 405, 55 L.Ed. 485, Ann.Cas.1912C, 562, or defeat "the assertion of Federal rights," Davis v. Wechsler, 263 U.S. 22, 24, 44 S.Ct. 13, 14, 68 L.Ed. 143; or which does not allow a reasonable period for resort to the courts for enforcement of the class of rights subjected to the limitation. Campbell v. Haverhill, supra; Lamb v. Powder River Live Stock Co., 8 Cir., 132 F. 434, 439, 67 L.R.A. 558; Terry v. Anderson, 95 U.S. 628, 24 L.Ed. 365.

■ The cases where the state statutes of limitations have been applied in federal courts in the absence of any federal statute of limitation applicable thereto, are those in which the statutes of limitations of the state were so general that all similar actions were included therein. The South Carolina statute of limitations, here sought to be applied, relates only those claims, suits or actions relating to wages claimed under a federal statute. It was unquestionably directed against claims arising under the Fair Labor Standards Act. The provisions of the Fair Labor Standards Act are based upon a contract of employment. An action for minimum wages, overtime compensation

and liquidated damages under it, is an action for wages due under an employment agreement; it is an action created by statute, upon a contract, obligation or liability. Northwestern Yeast Co. v. Broutin, 6 Cir., 133 F.2d 628; Constance v. Gosnell, D.C. W.D.S.C., 62 F.Supp. 253. The general statute of limitations of South Carolina, sections 387–396, Code of Laws of South Carolina 1942, prescribing the time in which actions may be brought upon a contract and upon a liability created by statute, provides: "Within six years; (1) An action upon a contract, obligation, or liability, express or implied, * * *. (2) An action upon a liability created by statute, other than a penalty or forfeiture."

It will thus be seen that under the general statute of limitations of South Carolina an action upon a contract, or obligation, or liability, or an action upon a liability created by statute, other than a penalty or forfeiture, may be brought within six years after such action shall have accrued, while under a special statute of limitations of the same state, an action upon a contract, or obligation, or upon a liability created by a federal statute, must be brought within one year "from the time of the accrual of the demand." This is a discrimination against federal claims and rights accruing under federal laws, and violates Article VI of the Constitution. "Its enforcement would result in denying to those seeking to assert such claims, the equal protection of the law. 14th Amendment, Constitution, Sec. 1." Republic Pictures Corporation v. Kappler, 8 Cir., 151 F.2d 543, 547.

The Fair Labor Standards Act is a remedial and humanitarian statute, the prime purpose of which is "to aid the unprotected, unorganized and lowest paid of the nation's working population." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 707, 65 S.Ct. 895, 902. The liability imposed by section 16(b), 29 U.S.C.A. § 216(b), was intended as a major enforcement measure to effectuate these purposes. The type of worker for whose protection the remedy is provided is usually too uninformed or too fearful of losing his job to assert his claims against his employer speedily, and Congress advisedly placed upon the employer the burden of compliance with the Act, and the Supreme Court has said that however perplexing the employer's problem in determining whether his employees are subject to the Act, "the difficulty does not warrant shifting the burden to the employee."

Overnight Motor Co. v. Missel, 316 U.S. 572, 583, 62 S.Ct. 1216, 1222, 86 L.Ed. 1682.

It is my opinion that the foregoing statute of limitations of South Carolina also unreasonably interferes with federal regulation of interstate commerce in violation of Article 1, Section 8 of the Constitution. The Fair Labor Standards Act is a statute regulating interstate commerce, Owens v. Greenville News-Piedmont, D.C. W.D.S.C., 43 F.Supp. 785, and is a matter of national concern. The purpose of the regulation is "that interstate commerce should not be made the instrument of competition in the distribution of goods produced under substandard labor conditions," United States v. Darby, 312 U.S. 100, 115, 61 S.Ct. 451, 457, 85 L.Ed. 609, 132 A.L.R. 1430, and the Supreme Court has recognized that this purpose implies a "Congressional policy of uniformity in the application of the provisions of the Act to all employers subject thereto." Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 710, 65 S.Ct. 895, 903.

The fact that the purpose is not expressed in the terms of the statute is of no moment. The Supreme Court has pointed out, "In whatever language a statute may be framed, its purpose must be determined by its natural and reasonable effect." Henderson et al. v. Mayor of New York et al., 92 U.S. 259, 268, 23 L.Ed. 543; Minnesota v. Barber, 136 U.S. 313, 319, 10 S.Ct. 862, 34 L.Ed. 455.

It is familiar doctrine that the prohibition of a federal statute may not be set at naught, or its benefits denied, by state statutes or state common law rules. To the federal statute and policy, conflicting state law and policy must yield. Sola Electric Co. v. Jefferson Co., 317 U.S. 173, 176, 63 S.Ct. 172, 87 L.Ed. 165. "The States cannot, in the exercise of control over local laws and practice, vest State courts with power to violate the supreme law of the land." Kalb v. Feuerstein, 308 U.S. 433, 439, 60 S.Ct. 343, 346, 84 L.Ed. 370; Davis v. Wechsler, 263 U.S. 22, 24, 44 S.Ct. 13, 68 L.Ed. 143.

Furthermore, it is now well established by the Supreme Court in a consistent line of cases from its earliest days to the present time, that statutes will be construed as operating prospectively, unless an intention that they shall have retrospective effect is clearly expressed, and that they will not be given retroactive effect or construed

to change the status of pending claims unless the legislative purpose so to do plainly appears. United States v. Heth, 3 Cranch 399, 413, 2 L.Ed. 479; White v. United States, 191 U.S. 545, 552, 24 S.Ct. 171, 48 L.Ed. 295; Shwab v. Doyle, 258 U.S. 529, 534, 42 S.Ct. 391, 66 L.Ed. 747, 26 A.L.R. 1454; United States v. Magnolia Co., 276 U.S. 160, 162, 163, 48 S.Ct. 236, 72 L.Ed. 509; Brewster v. Gage, 280 U.S. 327, 50 S.Ct. 115, 74 L.Ed. 457; Hassett v. Welch, 303 U.S. 303, 58 S.Ct. 559, 82 L.Ed. 858.

The action in this case was commenced on June 22, 1944. Following preliminary motions, issues were joined and the action was pending prior to May 25, 1945, the effective date of the foregoing statute of limitations. There is nothing in the Act to indicate that the Legislature of South Carolina intended to make it retroactive in effect. Therefore, the statute establishes rules for the future, and does not change the status of claims pending on its effective date.

Finally, the defendant contends that plaintiffs' action for liquidated damages constitutes an action upon a statute for penalty or forfeiture, and alleges that such action for liquidated damages, which may have accrued prior to the 14th day of June, 1941, is barred by section 389, Code of Laws of South Carolina 1942, which provides that an action upon a statute for penalty or forfeiture must be commenced within three years after the cause of action shall have accrued. The liquidated damages for failure to pay the minimum wages, under the provisions of the Act, are compensation and not a penalty or punishment by the government. Overnight Motor Co. v. Missel, supra; Constance v. Gosnell, supra; Northwestern Yeast Co. v. Broutin, supra; Culver v. Bell & Loffland, 9 Cir., 146 F.2d 29. And, I cannot see how liquidated damages recoverable under the Act could be a forfeiture.

For the foregoing reasons, I must conclude that the plaintiffs are engaged in commerce within the meaning of the Act; the defendant as to interstate shipments is not furnishing services or transportation within the meaning of Part 1 of the Interstate Commerce Act, and is not exempted from paying overtime compensation; that the special statute of limitations (Acts of General Assembly of South Carolina 1945, page 377) is invalid and cannot be enforced

in the federal court; that such Act operates prospectively, and does not affect the plaintiffs' claims in this action; that the action for liquidated damages is not one upon a statute for penalty or forfeiture; and that plaintiffs' cause of action is not barred by any statute of limitations of South Carolina.

Findings of fact and conclusions of law, as required by Rule 52(a) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, will be filed herewith.

Counsel may submit an appropriate order accordingly.